Good morning, Your Honors. My name is Glenn Cartlidge. I'm C.J.'s appointed counsel to represent Mr. Burgess on appeal. I was not trial counsel, and I'd like to reserve some of my time for rebuttal. I'd like to discuss this morning, if it pleases the Court, the 11-member jury issue, but before I start with that, we did submit a 28-J letter regarding Castro and Blakely, and if this Court is not inclined to reverse on the jury issue or any other trial court issue, we would ask for a stay pursuant to that 28-J letter. Mr. Burgess' case, we feel it's controlled by United States v. Symington, and in that case, I think what the Court said that particularly applies to this case is that generally when you have some sort of inquiry about a disability of a juror, it's focusing on some specific event, like a heart attack or did the juror take some kind of medication, so that the trial court in doing an investigation can focus on that event, ask questions of the juror or the jurors, and find out what's going on without getting into the deliberative process. But when the inquiry goes to the actual merits of the case or how that particular juror feels about the merits of the case, then the rule of Symington comes into effect, and that's the reasonable possibility rule. And that rule states that, and I'm quoting from Symington, if the record evidence discloses any reasonable possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the courts must not dismiss the juror. Under such circumstances, the trial court has only two options, send the jury back to continue deliberating or to declare a mistrial. And what's your evidence that this dismissal was motivated in sufficient part under Symington by some view on the merits that this juror might have had? There are several things, Your Honor. First of all, the note itself. The note itself said in part, and I'm quoting, we, the rest of the jury, are concerned because he is unable to properly follow evidence that is needed to make a fair judgment. Let me read a portion of the jury note. Well, that just says that he's valid, that, you know, he can't follow. It doesn't give you a hint as to which side he's coming out. Right. And that's true, Your Honor. There is another portion that I'm going to read later, but let me read you what the jury note said in Symington. It said, and it almost tracks this language identically, however, the majority of the jurors sincerely feel that the juror in question cannot properly participate in the discussion with us. And I think that's even lesser of an impetus that this is what the jurors are focused on. Did Symington involve a sleeping juror? Pardon? Did Symington involve a sleeping juror? I believe it did. Did the jury note just say that the guy was asleep? Was there to be asleep? I think Symington said he was a stubborn juror. Oh, that's right. It was a stubborn juror. That's a big difference. I mean, you've sort of read one line out of the jury note in Symington and said, oh, you know, there's some similarity in words. But what they said here was, here's a juror who can't participate because he didn't pay attention to the evidence. He fell asleep. Symington said, this is a juror who can't participate because he's stubborn. Very different concept. They have nothing in common with each other, except maybe a few words, if you take them out of context. Well, I think our case, actually, I agree with you, Your Honor. They are very different. And I think our case is even worse. Because here you've got a Monday, a Monday afternoon or a late Monday morning, and they're talking about what happened three or four days ago. The jurors can't agree how much he was sleeping. They can't agree what material evidence he missed. They can't agree if he even missed any material evidence. One of them says he slept half the time, maybe three-fourths of the time. One of them says, well, no, he just nodded off occasionally. He admitted it. Pardon? He admitted that he slept. No, he did not admit he slept, Your Honor. What he said was, I nodded off occasionally. But I didn't miss anything. I had five pages of notes. If he was asleep, how would he know how much he missed? Well, in — There was quite a bit of testimony here. There were a number of people, people on both sides of him, plus other jurors. The judge went through very carefully in an evidentiary hearing, who all confirmed that he was asleep almost every day except during the testimony of Perry and Burgess. Okay. Well, I have two answers to that, if you would give me a moment. One is, I don't really care if he was sleeping the whole time. I mean, this Court and other courts have found that when the attorney is asleep the whole time, he's not incompetent. What is happening here — The Fifth Circuit. What is happening here is, he was — there is not one scintilla of evidence in this case that shows that he was not deliberating. Not a single thing. They're all focusing on what happened in the trial. What I think was happening here — How can he deliberate if he is snoozing through much of the evidence? What is there to deliberate about? He's not playing with the same set of marbles as everybody else. Well, first of all, the tapes were replayed. And that's the key government evidence. Second — That's not how it is on trials. You don't replay tapes. You know, you're solidly in the land of abuse of discretion, and a district judge faced with this unpleasant and difficult situation, I can't imagine what else a district judge could or should have done. I wouldn't have been surprised if the judge had done anything else. Well, when the judge — You know, the jury hearings talked to the juror in question, talked to the other jurors, got them to discuss what they had observed, and based on that conclusion, this juror missed large chunks of the trial. If that's not a legitimate reason for the district court to exercise discretion to dismiss a juror, I just don't imagine — can't imagine what would be. Well, my answer to that is that in the jury note also it said, he is also showing prejudice toward Perry. The district court — I understand that. It does say that. But let's put the shoe on the other foot. Let's say, in fact, your client had gotten convicted, and then you got evidence that, you know, one of the jurors had been asleep most of the trial. Wouldn't you be back here? Wouldn't you bring a habeas petition or, you know, depending on when it is, motion for a new trial, if you find out, you know, in time to do that, and say, Your Honor, the jury verdict is tainted. Look, you know, they reached the unanimous verdict. One of the jurors was out flucking along. And how can you possibly have unanimity of findings on what happened, you know, on the facts when one of the jurors was asleep? You couldn't possibly agree. I mean, you'd be arguing that, wouldn't you? Well, I think you're right, Your Honor. I probably would. However, I haven't been able to find in my research — What is a district judge supposed to do? I mean, be a little objective. I mean, I realize that's not your job, to be objective. But pretend to be objective. You know, I mean, what does a judge — you know, you are in a situation, you are not aware of it. Maybe the judge should have been aware of it during the trial, but is not aware of it. It's brought to his attention that this happened during the deliberations. What's a judge supposed to do? If you leave him in there and there's a conviction, then you've got a tainted verdict because you left him asleep in jail. He could have put in an alternate. Well, you can't put in an alternate without the consent of the defendant, can you? Yes, he can. That was one of the other mistakes that the court made. In 1999, I believe it was, Rule 24C was changed. He didn't have to have the consent of the defendant. So in that respect, the court was wrong. And he could have — Isn't there at least discretion as to which one of those? I know judges are most reluctant to add people to the jury without the consent of the parties. The more frequent remedy is to simply say you go without. Well, I still say that Symington controls this case. But putting that aside for a moment to answer your question, this wasn't a long case. This was a three-day case. This was one day of defense presentation, a day and a half of prosecution, including the opening statements, the voir dire selection. And then there was, I think, a half a day of closing arguments and rebuttal. And then it went to the jury on Friday afternoon. So this wasn't a complicated case. You can say this was a mistrial under the Meinster case. You can say, you know, this is a three-, four-day case. And what makes it suspicious, at least to me, is they start the deliberations on Friday. You know, I'm sorry. I don't understand what you're arguing. On Thursday. You're arguing that the judge should have just ordered a mistrial? I think the judge — You'll be here on a double jeopardy. The defendant didn't say order a mistrial. No, the — And so the judge would have had to order a mistrial over the defendant's objection. Then he could have — And he would have immediately said double jeopardy. Then he could have gone back and said, go back and deliberate. He could have done that, or he could have been in an alternate — How can he let them deliberate with a snoozing juror? Once he determines that this juror — for better or for worse, that was the finding. He — the district judge finds, based on all the evidence from a number of sources, including the admission of the juror himself, that he missed large chunks of testimony. That's his finding. How can he let the juror go back in the juror room and say, go ahead and deliberate? Any verdict that — after those findings, any verdict that the juror comes up with would be tainted. Because you'd have a trial fact who didn't hear all the evidence. It's much like saying, one day a juror calls in and says, I don't feel like showing up to court today. And the judge says, that's okay. We'll continue with the trial without you. Just show up tomorrow and we'll pick up — you know, that wouldn't work with it. Your Honor, I don't think there was any evidence that he was incapacitated in the jury room. He was participating in the deliberations. What the jurors said — It doesn't matter he was participating. I mean, I don't think we're communicating here. He can't participate if he's not there to hear the evidence. What if he just missed the day of trial? Well, look — You know, they didn't notice it, but one day the chair where this juror is, it happens to be empty. And nobody notices until afterwards. Can you just sort of say, okay, go back and deliberate? And never mind if he wasn't there for some of the evidence? No. No, of course not. There we go. And being asleep is much like being absent. But no one showed — They were in common. But no one testified. And there was no evidence to show that he missed material portions of the trial. Let me for a moment tell this court what this trial consisted of. Day one was the picking of the jurors and the opening statements and Agent Slump. You know, you're going to have a very difficult time with this because we — You know, I'm going to have a hard time accepting there's any part of the trial that is not material. I mean, if you say — For example, let's say a juror said, oh, you know, I have a doctor's appointment, and I'm going to be gone for the next couple of hours. I'm just going to run down the street to my doctor. And the judge said, well, that's okay. The part of the trial we're about to enter isn't material. You go ahead and go to your doctor, and we'll still be here when you get back. That wouldn't work. Every part of the trial for which jurors are present is material. You can't really talk in terms of materiality. Well, let me say it to you this way. The prosecution's case is to prove the elements of the crime. The defense's case is to prove — or shoot arrows into the prosecution's case. When this juror sent out — when they sent out a note saying he was prejudiced against Perry, what I think that meant and what the evidence shows that that meant is — It didn't say — it didn't say against. Towards. Prejudice towards Perry. Yeah, I don't quite know what that means. I think it's very clear that it means he's got a preconceived notion. I looked this up in the dictionary, and prejudice doesn't mean a positive thing in general. But at any rate, it's like in a debate. When you're on the positive side, you've got to prove certain things. When you're on the negative side, all you've got to do is disprove one of their things. When the jury found out that he was prejudiced towards Perry, they were saying, in essence, he's believing the defense — entrapment defense, and he's going to vote against this. And I think that's where they were going. I still think Symington controls here. It's not a 23B case. It's not a 24C case. It's Symington. When the judge gets a note that says to him maybe they're going into the jury process, then the judge has got to stop and step back and say, I've got a problem here. This is not somewhere where I'm going to interview four jurors, not all of them, and they all are all over the place saying what he's missed, what he didn't miss. I think it was a ruse by the jurors to get this juror off because he was the holdout juror. What happens — and I'm taking a variation of what may be the underlying facts, but I'm not sure. Yes, sir. What happens if it's simultaneously true that this juror slept through a fair amount of the trial, but also that the juror in the deliberations has expressed certain views and that the majority of the jurors don't want that juror there, and maybe their motive is because he's standing in the way of a verdict, and maybe their motive is because he slept, and maybe their motive is mixed, somewhat indeterminate and imprecise. And so they send a note out to the judge that says he slept through a fair amount of the trial, and besides, he's formed some judgment on the case. Is the judge required to keep that juror in place who slept through a fair amount of the trial? Simonton says two options. And if there's a reasonable possibility, not the reasonable probability in other circuits, but a reasonable possibility that their motive for getting this juror off is related to his view on the evidence, then he's got two options. And I'm quoting, send the jury back to continue deliberating or declare a mistrial. And I'd like to reserve my time. But you don't have a sleeping juror in that case, do you? No, but she – So you don't have Judge Fletcher's – that's not responsive then to Judge Fletcher's question, which was what happens when we have – when we have – in the minds of the jurors, we may have two different sets of motivation. In fact, we may have jurors who are purely upset over the question of him sleeping and other jurors who are thinking to themselves, if we can get rid of this guy, we can get – we can be done with this and get home. And we may have some other jurors thinking, well, I don't know, this has been kind of strange. What is the district judge supposed to do in that case? I still say Simonton controls because they had replayed the tapes and they kept saying we're explaining – But one of the Simonton options is simply not open. You can't send the juror back in to deliberate once you determine that he missed large chunks of testimony. I don't agree, Your Honor. Well, I'm sorry. You're going to have to persuade – you know, do a little better to persuade me of that. District judge finds that the juror has missed substantial portions of the trial by sleeping and says that's okay, you go back and deliberate. How does he get the facts deliberate? Maybe the reason he is favoring defendant is because that's all the – that's all the evidence he listened to. And so there isn't anything to offset the testimony he did happen to be awake for. This was a very simple case. It's a possession by an ex-felon. I think – Obviously not an exciting case. Not exciting enough to keep the juror awake. That's right. But I think there was enough evidence to convict, I think, to convict Mr. Burgess of being an ex-felon, he admitted it, and of selling the guns to the undercover agent. Okay. And probably this juror said, yeah, they've done that. But also I listened on day three when Perry got up there and testified and when Burgess got up there and testified, and I think it was an entrapment. So I think there was enough evidence for him to decide that Mr. Burgess was guilty, but he also had an entrapment defense, and I'd like to save some time for about a minute. Thank you. Okay. We'll hear from the government. Good morning, Your Honor. I'm Kimberly Frayne. I'm with the U.S. Attorney's Office in the District of Nevada. Was either of you the trial counsel? No, sir. I was not. I don't believe she was not either. How can you have a juror sleeping for days on end and nobody in the courtroom notices? All the jurors sort of say, and nobody notices. Don't the lawyers and the judge sort of scan over what's going on? Don't they hear the snoring? Your Honor, the record is clear, at least from the trial judge's attempt to recreate what happened, is there were a few indications during the course of the trial that had counsel of the defense or the court itself been more diligent, might have promoted inquiry before deliberations had occurred. That being at one instance, I think there was an audible snort from the direction of the jury box, but the court and trial court indicated in its discussion that it couldn't be determined who exactly, what juror exactly that noise emanated from. There was also an instance on, I believe, day four of the trial where it was brought to the court's attention that one of the jurors was sleeping and the court immediately took a break in order to allow the jury to sort of stretch their legs and try and come back and be able to focus more. The third event that's identified by the trial court is as the jurors have been instructed and have been released to go back in to begin their deliberations, I believe two unidentified jurors, two jurors mentioned to the clerk of the court that they were concerned that juror number six had been sleeping. But at that point, I don't think it was unreasonable for the court to take no action because he had no indication whatsoever about the extent. He had no personal indication of the extent of that juror's impairment at that particular point in time. It was only after the note came from the jury panel indicating the extent of this issue that the court then needed to inquire to see whether there was just cause to remove the sleeping juror because the juror was impaired enough they couldn't participate and fulfill his duties as a juror. So there was a few indications based on that record. Unfortunately, that's not where the court was. The court was on the ‑‑ We don't have any sleeping juror cases, eh? I'm sorry, sir? We don't have any sleeping jurors. There's no case on point in this district, no, sir. How about this circuit? I'm sorry. I don't know. I'm sorry. Anywhere else? It's a surprisingly common phenomenon. It is, sir. When I served on a jury in state court, we actually had an instruction on this. The judge said, I know some of you may fall asleep during the trial, and what I will do is I will slam a book on the bench so as not to embarrass anybody, but in an effort to wake you. This was before the trial. I'm a little surprised that this doesn't come up more often. There's a First Circuit case and ‑‑ I'm not quite sure what to do about it. Maybe sort of sleeping during parts of the trial is maybe part of the condition of being a juror, and we just let it go. Your Honor, there are a First Circuit case and a Second Circuit case, both of which were cited by the government. U.S. v. Barone is the First Circuit case, and United States v. Reese is the Second Circuit case. In my research, there are a number of cases that deal with sleeping jurors. It appears to be, as you point out, a fairly common occurrence. Most of those cases, however, fall into two categories, one in which the court was able to hear about it and do something about it before the jury began deliberating, and then the ‑‑ he buzzes the chairs or something. Counsel, let me take you back to Judge Fletcher's question to opposing counsel about mixed motives on the jurors. We have some jurors who are clearly concerned about an inability to deliberate because he's been sleeping during the trial. We have other jurors who are thinking, let's get this guy off so we can go home. Now, what are we supposed to do in a case like that? And what steps did Judge Dawson take here to assure himself that the latter was not the problem here? Well, first I would say as the government's position that that's not what happened here, that there was no evidence that in the jurors' minds there were this mixed motive. Counsel is, I think, appropriately concerned about some language here that talks about prejudice towards the principal witness, Mr. Perry. And the court inquired, Your Honor, of two of the three jurors who were, as part of the deliberations, whether there was any other reason besides the sleeping that they were dissatisfied with what was occurring, and they both answered no. And I can direct you to where that is in the record if you would like to review that. So ‑‑ Yeah, but don't fight the hypothetical. Let's go with it for a minute. Yes, sir. All right. The hypothetical being there are two motives. All the district court can do is inquire as to whether this juror is impaired. He can intrude upon the deliberations and secrecy of the jury box. And so ‑‑ But what if we had two jurors that had been sleeping, but the note from the jury is only objecting to one, the one who's obstructing a quick verdict? Now what's the district judge supposed to do? Well, if the district judge finds that they are both impaired, then they both need to be removed. He's objecting. Nobody's objecting to one or the other. Nobody's objecting to a second juror. We're only objecting to the first juror. I take it your position is that if this is brought to the judge's attention, the judge would have to determine as to both jurors whether either juror is impaired. Yes, because the court has a responsibility both to the government and to the defendant that a fair trial is received. Let's say the, you know, the jurors object to one, but, you know, there were two sleeping, but we object to one, and the judge says, okay, I'm going to examine both of them and finds both of them were sleeping. Do they get treated the same? Do they get treated differently? Does one get treated better than the other one because the other jurors are objecting when I'm objecting? No, if the court has a finding that both have been sleeping such that they've missed enough of the trial that they are impaired, they need to be removed regardless of their position on whether the defendant is guilty or not. What happens if, in the middle of deliberations, the jurors realize that one of the jurors has an undisclosed conflict and bring that to the judge's attention? I would say that it depends on how that conflict arises. If it is a conflict that is triggered by some outside influence that has impressed itself upon It's something that turns out the juror, in fact, knows one of the witnesses, didn't disclose it during deliberations. I'm sorry, didn't disclose it during voir dire, but then as they're deliberating, a witness says, oh, I know that guy, he's a big liar. I think that the court then has a duty to inquire of that juror whether or not that is true, first, in the first instance, the circumstances exist, and whether that knowledge If it's found to be true, the court then has a possibility to deal with the situation as it appears there. And the motivation, in your view, the motivation of the other jurors in bringing this to the court's attention is essentially irrelevant? I mean, let's say they pounce on this because this is a troublemaking juror, and the reason they bring it to the court's attention is they hope to get rid of the guy. I don't think that the court can delve into the subjective views of what's going on in the juror, with the juror members in deliberation. All the court can do is determine if the circumstances are clear that there is an issue. Well, let's say they say that. They say that Mr. X has been, you know, where we would have reached a verdict long ago, but for Mr. X. You know, juror X, and it turns out juror X, in fact, knows one of the witnesses and didn't disclose it when asked by the court during voir dire. Let's say that's what the jury note says. If we could just get rid of this guy, we'd have a verdict, and it turns out we found this out during the deliberations. Does the court simply ignore the motivation and deal with the conflict then, or does it have to take the motivation of the jurors into account? Well, I think the difference in the hypotheticals, if I may understand correctly, is at one point it was really subjective speculation as to why the jurors were bringing this forward. And in your hypothetical, it is stated that because this is the juror, that is a holdout or a deadlock. Is that my understanding your hypothetical correctly? Let's say the connection is quite clear, that they make it express. They say the reason we're bringing this to the court intentionally is this guy is an obstructionist, and we've now discovered he's got this conflict. We think the court should remove him. And in your hypothetical, is the conflict clearly impair the juror's ability, or is that? Let's assume it is. I don't know why. But it's the kind of conflict that if had been disclosed at voir dire, would have sustained a challenge for cause. Maybe, you know, his brother-in-law, one of the cops, you know, something that would easily have supported a dismissal for cause. And that's not disclosed in voir dire and comes out during deliberations, and the jury then brings it to the court's attention for the very purpose of getting rid of the juror. So, I mean, the two models, it seems to me, I think what opposing counsel is arguing is, if the thing is brought to the court's attention for the purpose of removing a juror who is not sympathetic or somebody else, then we adopt the Simon model. You either send him back to the liberator, you dismiss. Those are the two options. The other possibility is to say, if you have a genuine conflict, if you have something that genuinely disqualifies a juror from participating, sleeping, conflict, whatever, it doesn't matter how it comes to the court's attention. Once the thing is a genuine, objective thing, it's just treated like you would any other genuine, objective disability, and you treat it that way. I think both are perfectly plausible models on how to deal with that problem. And I think that that's correct, Your Honor. And I'm sorry I can't tell you definitively one or the other should control, because unfortunately, and that's why it's an abuse of discretion standard, it's the circumstances that are arising from each particular case. And in the hypothetical that you are constructing, you are moving it further and further to the side where it would be most appropriate for the trial court to find that the motivation articulated by the jury is so clearly connected with the deliberations that are occurring. But that's what makes hypotheticals useful, is that they bring into focus things that are often blurred by making them extreme. And so if you can say, well, even in that extreme circumstances, you reject the motivation, then that solves the problem. If you say, no, we couldn't accept that, then you have to think about a line to draw and where you draw the line. I don't know what the answer is to that. Your Honor, I don't either. But I would submit that if you have both instances very clear, and hypothetically they're clearly deadlocked, but they're deadlocked for the reason that this juror fell on his way back to the deliberation chamber, hit his head and has total amnesia about what he heard and is only relying on the evidence that the jury is relating to him secondhand, but is still the lone holdout, I don't know that the court would have any option other than to mistry that case. Because clearly that juror cannot be allowed back onto the panel because there's just cause to remove them. My style is a different option than what happened here. There's mistrial. There's also saying we're going to lift the juror out of there and let the jury continue or an alternate, you know, let the jury continue deliberating without the juror. That's really where we're at. Should the judge have forced a mistrial in this case, it's quite clear to me, and I don't think anybody disagrees, that once the judge determines that the juror has missed large chunks of the trial by sleeping, can't possibly send the juror back and have him continue deliberating with the rest of the jurors. It just wouldn't work. I mean, by hypothesis he's disqualified from deliberating because he's missed part of the trial. So the real question then is, do you then have to force a mistrial? Is the only remedy left? The jurors try to get rid of him. They try to get rid of him by bringing this genuine problem to the court's attention. The court determines it's a genuine problem, so you can't send him back to deliberate. Does the only option at that point become mistrial? And, you know, you just have to go back and do it again. Well, in the instance that the court's describing, if it's so clear on the record that it's because this person is the sole holdout and is deadlocked, if the court allows the verdict to come forward of guilty by removing that person, we're just going to be looking at it backwards as a Sixth Amendment problem from the defendant after the verdict is returned. So... You know, realistically, what I think is most likely to happen in a case where you've got a sleeping juror, and this may or may not have happened in this case, it strikes me as realistically what's most likely going to be the case is that the jurors are not going to start trying to get rid of somebody who's been sleeping, until, for some reason, that juror becomes a problem. If the juror just kind of sits there and says, yeah, yeah, okay, I'm kind of with you, and so on, I suspect that, in most instances, we're not going to hear from the jury that we've got a sleeping juror until, well, he's got a prejudice toward Mr. Perry, or until whatever it is. There's going to be something else going on there. It's not just going to be he was sleeping. Otherwise, I think we'd have a lot more sleeping juror cases. Well, except, Your Honor, that what I my the government's analysis of how what arose from when the court interviewed the jurors is that it seems to me from the frustration that at least the initial juror, not juror number six, but the first person who signed the note that was interviewed by the court, it looks to me like for a period of time, and when they heard the first note, the jurors were doing what they do, which is try and analyze the evidence and determine how they feel about it. And then as they're getting that clear in their prospective heads, that clarity is not coming to juror number six just because he doesn't have the information that he needs in order to order it out. And so they play the tape again at his request. And by the time all of that has happened and the other jurors have got it clear in their mind and they want to start deliberating the guilt aspect of this, they're being hampered by that by a juror who missed so much of the trial that he can't participate clearly in that guilt process. Well, that's probably a little simplifying. I have seen jurors kick one of their members off for being uncooperative and find a conflict. You know, they come on and say, oh, you know, this was, you know. So this happens more often than, I mean, it probably happens as often as sleeping jurors. And as Judge Fletcher said, those problems only come to light, the conflicts, the undisclosed conflict or the sleeping or whatever, when you've got one juror holding out and stopping everybody else from going forward. And at that point, the jurors become very persnickety and say, oh, this person, you know, and they send you a note and they say this person has a conflict you really ought to take a close look at, or the juror is sleeping or something of that sort. You know, it's a real problem because it would be very rare if ever at all the jurors will suddenly say, you know, this juror is deliberating fine, but we just discovered he was sleeping or we discovered she had a conflict and we just wanted to bring it to the Court's attention, but she's fine. But the record before the Court in this case doesn't show any of that. I mean, other than the way the note initially was phrased about the statement with Perry, the Court then inquired. It's telling. The note is telling because it coupled the two things. They could have said the juror was sleeping alone, but they mention he wasn't sleeping during the testimony of those two witnesses and they do mention his bias. They were coupled together. They were clearly not independent things. But there's no way of telling bias towards or biased against Perry as a witness. It doesn't matter. Perry was the first witness he heard. But it doesn't matter, does it? It doesn't matter. It is that he has a bias in the case, whether it's a bias for or a bias against him. It really doesn't matter. Simon doesn't require you to say it's against whom the bias is. It's enough that they're doing it for him, that they're doing it to the juror, that they're telling on him to the judge because of his view in the case. But, Your Honor, if that was true, then we wouldn't have the rule as we have it. If that was true, that we need to suppose that all the time there's some other reason behind why jurors find reasons once deliberations start to bring up issues like this, then we would have a rule that that's an automatic mistrial. If the court finds that those things, in fact, exist. But that's not what Rule 23b allows for and provides for. And so the judge did the best that he could here in trying to ---- Difficult situation, no doubt about it. Thank you, sir. Okay. Thank you. I think you have three minutes and five seconds. Thank you, Your Honor. Rule 23, I'd like to read just part of the commentary, 23b, if I can find it in my notes. Here it is. If the trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken. And right before that, it says the amendment provides that if a juror is excused after the jury verdict, the jury has retired to consider its verdict is within the discretion of the court whether to declare a mistrial or to permit deliberations to continue with the 11 jurors. I still say that this case falls under the reasonable possibility rule, but I would like to point out to the court three other things. Number one, the court had ex parte communications with two of the jurors. It was not communicated to either party until this hearing came up. And the court relied on that to make its ruling that this juror was sleeping. The United States said that the ex parte is really not quite the right term. Excuse me, Your Honor? Ex parte is not quite the right term. When the court communicates with any of the parties or the members of the court staff or the jury, it's not an ex parte communication. Ex parte communication is communication between one party in the court and another party isn't present. Thank you, Your Honor. It's a bit of a pejorative term, and it's also inaccurate. Correct. Thank you, Your Honor. It was that he had ‑‑ I thought it meant that he had contact with one of the jurors. But at any rate, this wasn't communicated to the lawyers. The second thing was that the juror ‑‑ that the court saw, as my opposing counsel said, that one of the jurors was sleeping, but he said he did not know who it was. And this also was not communicated to the parties. I think that's because it wasn't seen as significant at the time. And the third thing is that the court, three times in making its determination, said that he was not excusing this juror to break a deadlock. Now, where that came up, I don't know. I do know that defense counsel mentioned it once earlier in the argument. But to mention it three times in making his ruling, I think, means that he was protesting too much. I do have to ‑‑ Once it's right, say it three times it's wrong? I think so. Okay. We did cite two sleeping juror cases, but none of the cases were post facto examinations. They were habeas cases or they were cases before deliberations. One of the cases is a Ninth Circuit case, and that was Barrett. And then the second case was Freitag out of the Fifth Circuit. And I would like to also remind the court in my next 15 seconds not to forget about our 28J letter if it's not ‑‑ You've got a Blakely issue. Pardon? You've got a Blakely issue. Yes. A big one. Thank you. Okay. Thank you. The case is all yours, counsel. Let's see. The last case on the calendar is Levy v. Roe.
judges: Kozinski, W. Fletcher, Bybee